UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| NIKHIL BHARADWAJ JOIS,<br><br>Plaintiff,<br><br>v.<br><br>INDIANA UNIVERSITY,<br>INDIANA UNIVERSITY BOARD OF TRUSTEES,<br>EMILY C. WALVOORD,<br>IYABODE OKORO,<br>ABIGAIL KLEMSZ,<br>JOHN DOES 1-25,<br><br>Defendants. | ) | No. 1:24-cv-01509-JRS-MKK |

**Order Granting Defendant's Motions for Summary Judgment**

Plaintiff Nikhil Bharadwaj Jois is a former medical student at Indiana University School of Medicine ("IUSM"). Jois first matriculated into IUSM in August 2019. In August 2022, Jois was dismissed from IUSM after failing two courses during his first year of medical school and twice failing an examination that is required to move onto the second phase of medical school. Before his dismissal, Jois participated in two proceedings and two appeals regarding his academic record and the possibility of dismissal.

Jois sued[1] Indiana University, the Indiana University Board of Trustees, and IUSM faculty members Emily C. Walvoord ("Dr. Walvoord"), Iyabode Okoro ("Dr.

[1] Jois originally also sued Andrew S. Deane ("Dr. Deane"), Michael J Klemsz, and Jay L. Hess ("Dean Hess"), but the parties stipulated to dismissing those defendants. (ECF No. 17.) The parties also stipulated to dismissing negligence and intentional infliction of emotional distress claims as to all Defendants at that time. (*Id.*) Despite such stipulation, Jois

Okoro"), and Abigail Klemsz ("Dr. Klemsz") (collectively, "Defendants"). Jois claims that Defendants violated his rights to procedural due process in violation of 42 U.S.C. § 1983; engaged in disability discrimination in violation of Title II of the Americans with Disabilities Act, 42 U.S.C. § 12132, and the Rehabilitation Act, 29 U.S.C. § 794; engaged in race discrimination in violation of Title VI of the Civil Rights Act, 42 U.S.C. § 2000d; breached their contract; and are liable under a promissory estoppel theory.

The Defendants move for summary judgment on all counts. (ECF No. 43). For the following reasons, Defendants' Motion for Summary Judgment is **granted**.

## I. Legal Standard

A motion for summary judgment asks the Court to find that a trial is unnecessary because there is no genuine dispute as to any material fact so the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). In other words, summary judgment is warranted when "no reasonable jury could find for the nonmoving party." *Dempsey v. Atchinson, Topeka & Santa Fe Ry. Co.*, 16 F.3d 832, 836 (7th Cir. 1994). To evaluate whether summary judgment is warranted, the Court must view the record and draw all reasonable inferences in the light most favorable to the nonmoving party. *Khungar v. Access Cmty. Health Network*, 985 F.3d 565, 572–73 (7th Cir. 2021). "However, our favor toward the nonmoving party does not extend to drawing [i]nferences that are supported only by speculation or conjecture." *Argyropoulos v. City of Alton*, 539 F.3d 724, 732 (7th Cir. 2008) (alteration in original)

---

dedicates several pages to arguing that those claims should not be defeated on summary judgment. (See Pl.'s Br. 24-26, ECF No. 51.) The Court does not address those arguments.

(internal quotation marks omitted). The Court must not weigh evidence or make credibility determinations on summary judgment—those tasks are left to the factfinder. *Miller v. Gonzalez*, 761 F.3d 822, 827 (7th Cir. 2014).

Moreover, the Court may rely on the materials cited by the parties and need not "scour the record" for relevant evidence. *Grant v. Trs. of Ind. Univ.*, 870 F.3d 562, 572–73 (7th Cir. 2017); Fed. R. Civ. P. 56(c)(3). Thus, a party seeking summary judgment must inform the Court of the basis for its motion and identify the record evidence it contends demonstrates the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The party opposing summary judgment "is required to marshal and present the [C]ourt with the evidence []he contends will prove h[is] case." *Goodman v. Nat'l Sec. Agency, Inc.*, 621 F.3d 651, 654 (7th Cir. 2010). "[T]he nonmoving party may not simply rest upon the pleadings but must instead submit evidentiary materials that 'set forth specific facts showing that there is a genuine issue for trial.'" *Siegel v. Shell Oil Co.*, 612 F.3d 932, 937 (7th Cir. 2010) (quoting Fed. R. Civ. P. 56(e)). Finally, the Court is not "obliged to research and construct legal arguments for parties, especially when they are represented by counsel." *Nelson v. Napolitano*, 657 F.3d 586, 590 (7th Cir. 2011).

## II. Local Rule 56-1

First, the Court must address Defendants' contention that Jois violated Local Rules by not including a Statement of Material Facts in Dispute and not directly addressing or controverting any of Defendants' material facts with admissible evidence. (Def.'s Reply Br. 2, ECF No. 54.) The Court agrees with Defendants, and

thus disregards Jois's statement of facts to the extent that it does not comply with Local Rules.

Under Local Rule 56-1, a party seeking summary judgment must include a "Statement of Material Facts Not in Dispute" and the party opposing summary judgment must respond with a "Statement of Material Facts in Dispute" that "identifies the potentially determinative facts and factual disputes that the party contends demonstrates a dispute of fact precluding summary judgment." S.D. Ind. Local Rule 56-1(a)-(b). The Local Rules also require that all asserted material facts be supported by specific citations to admissible facts. *Id.* at 56-1(e). The movant's facts are admitted unless the non-movant "specifically controverts" them, shows them to be unsupported, or demonstrates that reasonable inferences can be drawn in its favor. *Id*. at 56-1(f). The purpose of Local Rule 56-1 is "to have the litigants present to the district court a clear, concise list of material facts that are central to the summary judgment determination." *Curtis v. Costco Wholesale Corp.*, 807 F.3d 215, 219 (7th Cir. 2015) (referencing N.D. Ill. L.R. 56-1, which is an exact analogue to S.D. Ind. L.R. 56-1(a)). Thus, in a motion for summary judgment, "it is the litigants' duty to clearly identify material facts in dispute and provide the admissible evidence that tends to prove or disprove the proffered fact." *Id.* The Seventh Circuit consistently upholds the discretion of district courts in requiring "strict compliance" with local rules. *Flint v. City of Belvidere*, 791 F.3d 764, 767 (7th Cir. 2015).

After Defendants moved for summary judgment, Jois submitted his response, including a section entitled "Statement of Relevant Facts." (*See* Pl.'s Br. 3-5, ECF No. 51.) Jois's statement fails to comply with Local Rule 56-1. Many of Jois alleged facts are made without a citation to any evidence in the record. Where citations do exist, Jois cites to entire exhibits, rather than to the page or paragraph number of an exhibit as required by Local Rule 56-1(e). Moreover, many of Jois's citations are added seemingly to create the appearance of support, but do not support the statement of fact at all.

For example, Jois cites generally to Exhibit 13 and 14, without pointing to a specific page, to state that Dr. Andrew Deane had wrongfully accused Jois of cheating, and that such allegations were later disproven. (Pl.'s Br. 4, ECF No. 51.) Exhibit 13 is a syllabus for Jois's Neuroscience and Behavior course, accompanied by Jois's inadmissible, *see* Fed. R. Ev. 802, added notes and highlights to the document. (Ex. 13, ECF No. 51-2 at 165-83.) Exhibit 14 is a series of emails regarding Jois's appeal process following his dismissal by the Student Promotion Committee, also accompanied by Jois's inadmissible, *see* Fed. R. Ev. 802, added notes. (Ex. 14, ECF No. 51-2 at 183-190.) The only mention of Dr. Dean's alleged cheating accusations is within Jois's inadmissible commentary added to Exhibit 14. Neither exhibit contains any admissible evidence of those cheating accusations but, rather, appears to be added—without any citation to a relevant hearsay exception, *see* Fed. R. Ev. 803—to create the appearance of support for this factual contention.

To further illustrate, Jois cites generally to Exhibits 7 and 9—once again without referencing specific page numbers—to state that he "disclosed his conditions and requested support from Dr. Okoro, his assigned advisor, and Dr. Abigail Klemsz, the Assistant Dean for Academic Advising." (Pl.'s Br. 14, ECF No. 51.) Exhibit 7 includes Dr. Klemsz' affidavit and a hodgepodge of communications between Jois and IUSM faculty, (*see* Ex. 7, ECF No. 55-2 at 22-50), none of which support Jois's contentions. Exhibit 9 is Jois's interrogatories responses, running a total of thirty-seven pages. (*See* Ex. 9, ECF No. 51-2 at 105-142.) Though it is not the Court's job to "scour the record" for evidence, *Grant*, 870 F.3d at 572–73, the Court did review the entirety of Exhibit 9. In his interrogatories, Jois merely stated that Defendants had "knowledge of his diagnoses," with no specific facts or documents showing which Defendants had that knowledge or how they acquired it. (Pl.'s Interrog. Resp. No. 3, ECF No. 44-5 at 6.)

The Court disregards the facts in Jois's response that are unsupported by citations to the record, fail to properly cite specific page numbers or paragraphs within evidence on the record, or are supported only by inadmissible statements, such as Jois's own commentary about a document in textboxes added to those documents. (*See, e.g.*, ECF No. 51-2 at 2, 8, 11, 14, 169, 184–190.)

## III. Material Facts

### *Jois's Academic Performance Prior to STEP 1*

Jois first matriculated into IUSM in August 2019. (Resser Aff. Ex. 4L, ECF No. 44-4.) During his first semester of medical school, Jois failed his Human Structure

course. (Reeser Aff. Ex. 4D, ECF No. 44-4.) His progress was thus reviewed by the IUSM Student Promotion Committee ("SPC") at its January 2020 meeting. (*Id.*) The SPC is composed of four fourth-year IUSM students and faculty members either elected or appointed by the IUSM Executive Associate Dean for Faculty Affairs. (Walvoord Aff. ¶ 19, ECF No. 44-2.) The SPC determines whether a student's academic performance is satisfactory based on the totality of the student's performance. (*Id.* ¶ 18.) The SPC placed Jois on academic monitoring and permitted him to retake his Human Structure course in the summer of 2020. (Klemsz Aff. ¶ 10, ECF No. 44-3.) In spring of 2020, Jois failed another course, Neuroscience and Behavior. (*Id.* ¶ 12.) After this second failure, Jois was called to meet with the SPC again at its June 2020 meeting, where he appeared and had the opportunity to make an oral statement. (*Id.* ¶ 12; Jois Dep. 97:5-11, ECF No. 44-1.) The SPC placed him on academic probation and permitted him to repeat Phase 1, Year 1 of medical school beginning in August 2020 at IUSM's Indianapolis campus. (Reeser Aff. Ex. 4L, ECF No. 44-4; Jois Dep. 98:3-98:18, ECF No. 44-1.) Jois successfully re-took Phase 1, Year 1 of medical school and the SPC removed him from academic probation in June 2021. (Reeser Aff. Ex. 4L, ECF No. 44-4.)

***November 2020 NBME Final Exam***

Jois experienced computer issues during the National Board of Medical Examiners ("NBME") final examination for his second attempt at the Human Structures course on November 5, 2020. (Walvoord Aff. ¶ 9. ECF No. 44-2.) The NBME is a non-party, nonprofit organization that creates assessments and learning

tools for medical students and professionals, including medical licensing examinations in conjunction with the Federation of State Medical Boards. (*Id.* ¶ 8.)

The NBME uses software that scans a student's laptop to ensure that the student does not have notes or software on their laptop that would permit the student to record or cheat on the examination. (*Id.* ¶ 9.) During the November 2020 examination, the NBME scan detected the presence of CleanShot X—a prohibited program—on Jois's computer. (*Id.* ¶ 9.) Because of the issue with the scan of his laptop, Jois ultimately took the exam on a school computer with less than the full time to complete the exam and passed. (Jois Dep. 147:16-16, ECF No. 44-1.) NBME informed IUSM of the issue. (*Id.* ¶ 10.) Dr. Maureen Harrington and Dr. Emily Walvoord met with Jois about the issue and determined that there was no violation of IUSM policies. (*Id.*; Jois Dep. 152:21-154:7, ECF No. 44-1.) Drs. Harrington and Walvoord's meeting with Jois was confidential and not reported to any other faculty or students. (Walvoord Aff. ¶ 10, ECF No. 44-2.) The university dropped further investigation. (Jois Dep. 153:24-154:4, ECF No.44-1.)

Jois claims that Dr. Deane, his professor for the Human Structures course, accused him of cheating on the November 2020 NBME. (Ex. 9, ECF No. 51-2 at 108.) Jois does not have personal knowledge that Dr. Deane personally accused him of cheating. (Jois Dep. 154:9-11, ECF No. 44-1.) Instead, Jois heard from Dr. Walvoord that Dr. Deane suggested they question Jois to determine if he was cheating. (*Id.* 154:11-17.) Jois was not present for this conversation between Dr. Deane and Dr. Walvoord and does not know what Dr. Deane said. (*Id.* 148:14-19.) No cheating

complaint was ever filed against Jois. (Walvoord Aff. ¶ 10-11, ECF No. 44-2.) Jois was never called before the SPC in relation to the NBME issue. (*Id.*; Jois Dep. 153:24-154:17, ECF No. 44-1.)

***First STEP 1 Exam Failure and Subsequent SPC Proceedings***

The United States Medical Licensing Examination STEP 1 examination ("STEP 1") is a national examination that assesses a medical student's understanding of sciences basic to the practice of medicine. (Walvoord Aff. ¶ 14, ECF No. 44-2.) IUSM requires medical students to take STEP 1 before they can begin Phase 2 of the medical curriculum. (*Id.* ¶ 15; Jois Dep. 158:15-17, ECF No. 44-1.)

Jois took the STEP 1 examination on March 19, 2022. (Klemsz Aff. Ex. 3E, ECF No. 44-3 at 27.) IUSM received notice of his failure of STEP 1 on April 6, 2022. (*Id.* ¶ 26.)

Most students study for STEP 1 for about six weeks. (Jois Dep. 158:22-159:2, ECF No. 44-1.) Jois did not begin studying for his first STEP 1 exam until three weeks before his exam date. (*Id.* at 167:13-15.) Jois said that "[he] was overconfident" because "[his] practice exam scores were high" and "[he] should have taken more time." (*Id.* at167:16-18.)

Jois never requested any disability accommodation in relation to the STEP 1 exam. (*Id.* at 171:4-171:7.) IUSM is not responsible for providing disability accommodation for the STEP 1 examination. (Walvoord Aff. ¶ 17, ECF No. 44-2.) The NBME has its own disability accommodations process and procedures for the STEP 1 examination. (*Id.* ¶ 16; Jois Dep. 171:8-171:10, ECF No. 44-1.)

Dr. Klemsz informed Jois that he would need to meet with the SPC because he failed STEP 1. (Klemsz Aff. ¶ 31, ECF No. 44-3.) The SPC reviewed Jois's academic progress during its April 11, 2022, meeting and placed him back on academic probation. (Reeser Aff. Ex. 4L, ECF No. 44-4.) The SPC asked Jois to submit a written statement by April 21, 2022, for discussion at their next meeting on April 25, 2022. (*Id.*) Jois's written statement to the SPC stated: "I failed my Step 1 examination because I simply did not do a good job in my exam preparation." (Reeser Aff. Ex. 4J, ECF No. 44-4; Jois Dep. 181:8-181:12, ECF No. 44-1.) At the April 25, 2022, SPC meeting, Jois requested another opportunity to take the STEP 1 exam. (Reeser Aff. Ex. 4L, ECF No. 44-4; Klemsz Aff. ¶ 33, ECF No. 44-3; Jois Dep. 204:15-204:19, ECF No. 44-1.) Jois was afforded the opportunity to present his case at this meeting. (Jois Dep. 204:4-204:8, ECF No. 44-1.) The SPC granted his request to retake the STEP 1 examination for a second time, affording him until June 4th—five and a half weeks later—to do so. (Jois Dep. 205:3-205:10, ECF No. 44-1; Reeser Aff. Ex. 4K, ECF No. 44-4.) The SPC informed Jois that a second failure of STEP 1 would lead to recommendation for dismissal. (Jois Dep. 207:8-207:13, ECF No. 44-1; Reeser Aff. Ex. 4K, ECF No. 44-4.)

***Second STEP 1 Exam Failure and Subsequent SPC Proceeding and Appeal***

The SPC "encourage[d] [Jois] to work with Dr. Margaret Bauer, the school's competency director in medical knowledge," in preparation for his second STEP 1 attempt. (Reeser Aff. Ex. 4K, ECF No. 44-4.) Jois did not reach out to Dr. Bauer and

did not begin studying for his second attempt at STEP 1 prior to his April 25, 2022, meeting with the SPC. (Jois Dep. 199:23-200:3, 207:14-207:18, ECF No. 44-1.)

Jois retook the STEP 1 examination on June 1, 2022. (Reeser Aff. Ex. 4L, ECF No. 44-4.) In July 2022, the NBME informed IUSM that Jois had failed STEP 1 again. (*Id.*; Klemsz Aff. ¶ 34, ECF No. 44-3.) The SPC once again reviewed Jois's academic progress in light of his second failure of STEP 1 during its July 11, 2022, meeting. (Klemsz Aff. ¶ 34, ECF No. 44-3.) The SPC voted to recommend dismissal from IUSM. (*Id.* ¶ 34; Reeser Aff. Ex. 4L, ECF No. 44-4.) Jois had fourteen days to submit a written appeal after the SPC voted to dismiss him. (Reeser Aff. Ex. 4L, ECF No. 44-4.)

Jois appeared before and provided documentation to the Appeals Committee on August 9, 2022. (Jois Dep. 39:20-40:7, ECF No. 44-1; Reeser Aff. Ex. 4N, ECF No. 44-4.) Jois submitted information from Dr. Dana Lasek, a psychologist with whom he participated in therapy for several years. (Reeser Aff. Ex. 4M, ECF 44-4.) Dr. Lasek stated that Jois had participated in therapy with her diligently and that, during the 2021-2022 academic year, Lasek noticed that Jois had been developing symptoms of anxiety. (*Id.*) Dr. Lasek's submission recommended that, if Jois were to continue as an IUSM student, he should engage in regular therapy and undergo a medical evaluation to rule out anxiety. (*Id.*; Jois Dep. 228:15-21, ECF No. 44-1.) Dr. Lasek's submission did not mention accommodation for his mental health conditions. (*See* Reeser Aff. Ex. 4M, ECF 44-4; Jois Dep. 229:4-229:6, ECF No. 44-1.) The Appeals

Committee unanimously voted to uphold the SPC decision to dismiss Jois. (Reeser Aff. Ex. 4N, ECF No. 44-4.)

Dr. Deane was a voting member of the Appeals Committee. (Jois Dep. 42:17-21, ECF No. 44-1.) Jois met with Dr. Marley Bradley of the IUSM Ombuds Office to discuss Dr. Deane's participation in the Appeals Committee. (Pl.'s Interrog. Resp. No. 15, ECF No. 44-5 at 35.) Dr. Bradley acknowledged that Jois's concern—that the professor who allegedly falsely accused him of cheating also served on the Appeals Committee for his dismissal—was a "valid flaw" in the process, so Dr. Bradley informed Dean Hess. (*Id.*)

After Jois met with the Appeals Committee on August 9, IUSM permitted him to make a final appeal to Dean Hess. (Reeser Aff. Ex. 4N, ECF No. 44-4; Jois Dep. 234:3-234:8.) Jois presented Dean Hess with a packet of information containing letters from faculty willing to assist him and the information provided to the Appeals Committee. (Jois Dep. 234:14-235:1, ECF No. 44-1.) Jois met with Dean Hess for twenty minutes on September 1, 2022. (*Id.* at 235:2-235:11.) On September 1, Dean Hess upheld Jois's dismissal, but permitted him to voluntarily withdraw in lieu of dismissal by September 15, 2022. (Reeser Aff. Ex. 4O, ECF 44-4.)

***Communications Regarding Jois's Disability***

Jois has been diagnosed with several mental health conditions, including anxiety, depression, and ADHD. (Pl.'s Interrog. Resp. No. 6, ECF No. 44-5 at 23.) Jois orally communicated his mental health issues to Dr. Walvoord as "extreme anxiety, especially exam anxiety." (Jois Dep. 56:12-56:13, ECF No. 44-1.) Jois verbally gave

Dr. Walvoord permission to look at his mental health records. (*Id*. at 56:2-56:9.) He also gave verbal permission to a dean at the IUSM Northwestern campus in 2019. (*Id*. at 56:2-56:6.) There is a firewall between the University's Department of Mental Health Services and the IUSM faculty. (Walvoord Aff. ¶ 5, ECF No. 44-2.) The Department of Mental Health Services will only release a student's health information to IUSM upon receiving a *written* release from that student identifying which information may be share with the school. (*Id*.) Students and faculty cannot authorize the release of this information orally. (*Id*.)

Jois never submitted any documentation or information to Dr. Klemsz or the Disability Accommodation Committee relating to any disability or accommodation. (Klemsz Aff. ¶ 18-19, ECF No. 44-3.) Jois's only communications to Dr. Klemsz were voicing his concerns about attending in-person orientation for his second Phase 1, Year 1 attempt because of his immunocompromised father and brother. (Klemsz Aff. ¶ 16, ECF No. 44-3.) Dr. Klemsz informed him that, if he had a documented disability, he could apply for accommodation according to the Disability Accommodations policy and provided a link with further information. (*Id*. ¶ 17.) Jois did not reach out with further questions or request an accommodation. (*Id*. ¶ 18.) IUSM provided Jois with additional resources during his repeat Phase 1, Year 1, including access to Dr. Iyabode Okoro, who specialized in working with students experiencing academic difficulties. (Klemsz Aff. ¶ 15, ECF No. 44-3.)

Jois also never requested any disability accommodation in relation to the STEP 1 exam, which, as noted, has its own disability accommodations process and procedures

independent of IUSM. (Jois Dep. 171:4-171:10, ECF No. 44-1; Klemsz Aff. ¶ 29, ECF No. 44-3.) The submission from Dr. Lasek during the appeal process after his second failure of STEP 1 was the first time he submitted information from an IUSM medical provider regarding his mental health conditions. (*See* Reeser Aff. Ex. 4M, ECF 44-4.)

***Regarding The Racial Discrimination Claim***

Jois is an Indian man. (*See* Pl.'s Br. 22-23, ECF No. 51.) Jois presents no evidence that any of Defendants' actions were motivated by his race or national origin. (Jois Dep. 55:22-56:1; 70:25-71:17; 101:15-18, ECF No. 44-1.)

## IV. Analysis

Defendants have moved for summary judgment on all claims: the procedural due process claim under 42 U.S.C. § 1983; the disability discrimination claim under Title II of the Americans with Disabilities Act, 42 U.S.C. § 12132 and the Rehabilitation Act, 29 U.S.C. § 794; the race discrimination claim under Title VI of the Civil Rights Act, 42 U.S.C. § 2000d; the breach of contract claim; and the promissory estoppel claim. Defendants' Motion for Summary Judgment is **granted** as to all claims. The Court discusses each claim in turn.

### A. Section 1983

Defendants argue that they are entitled to summary judgment on the claim that they violated Jois's rights to procedural due process in violation of 42 U.S.C. § 1983 because they are entitled to sovereign immunity and, even without sovereign immunity, because they did not deprive Jois of any property right. The Court agrees with both arguments.

*a. Sovereign Immunity*

First, Defendants argue that they are entitled to summary judgment on the § 1983 claim because IUSM is entitled to sovereign immunity. Jois failed to address this argument in his reply. *See Martin v. Jones*, 752 F. App'x 368, 369 (7th Cir. 2019), reh'g denied (Mar. 5, 2019) (complete failure to respond to argument results in waiver); *see also United States v. Cisneros*, 846 F.3d 972, 978 (7th Cir. 2017) ("[P]erfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived." (quoting *United States v. Berkowitz*, 927 F.2d 1376, 1384 (7th Cir. 1991))). Putting aside any waiver from failure to respond, the Court finds that IUSM is entitled to sovereign immunity.

Most public universities are entitled to sovereign immunity. *See Kashani v. Purdue Univ.*, 813 F.2d 843, 845 (7th Cir. 1987) ("The vast majority of cases considering the issue have found state universities to be forfended by the Eleventh Amendment."); *see also Kroll v. Bd. of Trs. of Univ. of Ill.*, 934 F.2d 904, 908-09 (7th Cir. 1991) (finding that Board of Trustees of University of Illinois was entitled to sovereign immunity). However, "[t]his determination requires a fairly fact-intensive analysis" in which courts consider where the public university sits in the state governmental context. *Kroll*, 934 F.2d at 908 n.2. The Court considers: (1) the characterization of the university under state law; (2) the guidance and control exercised by the state over the university; (3) the degree of state funding received by the university; and (4) the university's ability to issue bonds and levy taxes on its own behalf. *Parker v. Franklin Cmty. Sch. Corp.*, 667 F.3d 910 (7th Cir. 2012). Using

these indicia, the Seventh Circuit held that Purdue University, another state university in Indiana, was entitled to sovereign immunity. *See Kashani*, 813 F.2d at 845-48.

Under these factors, IUSM is entitled to sovereign immunity. First, Indiana University is considered an agency of the state under Indiana law. *See* Ind. Code 4-12-1-2(d) (defining "agency of the state" to include "the universities and colleges supported in whole or in part by state funds"). Second, Indiana exercises significant control over Indiana University, with the governor appointing all nine members of the Board of Trustees. Ind. Code 21-20-3-12(c) ("Whenever a vacancy occurs in the membership of the board of trustees because of death or resignation or for any other reason, the vacancy shall be filled by an appointment of the governor for the unexpired term"). Third, Indiana University receives significant state funding, and Indiana examines Indiana University's finances closely. *See* Ind. Code § 4-12-1-2(d), 4-12-1-7(a) (requiring state agencies to, among other things, file with the budget agency a detailed report of its spending, an estimate of necessary expenditures, and a written statement showing the reasons for estimated expenditures and requests for appropriations). Finally, like Purdue University, Indiana University has no power to levy taxes. *See Kashani*, 813 F.2d at 846.

Because Congress did not abrogate sovereign immunity when it passed § 1983, *see Will v. Mich. Dept. of State Police*, 491 U.S. 58, 67 (1989), and based on the preceding

analysis, Defendants are entitled to summary judgment on his claims for damages pursuant to § 1983.[2]

*b. Procedural Due Process*

Even if IUSM was not entitled to sovereign immunity, the Defendants would still be entitled to summary judgment on the § 1983 claim. To succeed on his procedural due process claim, Jois must establish: (1) a deprivation of a protected liberty or property interest; and (2) that the deprivation occurred without due process. *Rock River Health Care, LLC v. Eagleson*, 14 F.4th 768, 773 (7th Cir. 2021) (citing *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 59 (1999)). "A graduate student does not have a federal constitutional right to a continued graduate education." *Bissessur v. Ind. Univ. Bd. of Trs.*, 581 F.3d 599, 601 (7th Cir. 2009). An exception exists when the student can "establish that an implied contract existed between himself and the university that entitled the student to a specific right." *Id.* To establish this entitlement, "the student must 'point to an identifiable contractual promise that the [university] failed to honor.'" *Id.* at 602 (quoting *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 574 (1972)). "Generalities won't do; 'the student's complaint must be

---

[2] It is not clear against which Defendants the § 1983 claim is brought. The other counts either indicate that it is "As Against Defendant IUSM" or "As Against All Defendants," while the section 1983 claim does not. (*See* Pl.'s Compl. at 20, 21, 22, 23, 25, ECF No. 1.) If brought against Drs. Walvoord, Klemsz, and Okoro, then they are not entitled to qualified immunity if sued in their personal capacity. Nevertheless, they, too, are entitled to summary judgment, both because of the lack of a deprivation of property and because they did not personally participate in the alleged procedural due process violation as required under 42 U.S.C. § 1983. *Palmer v. Marion County*, 327 F.3d 588, 594 (7th Cir. 2003) ("Lawsuits against individuals require personal involvement in the constitutional deprivation to support a viable claim."); (Walvoord Decl. ¶ 22, ECF No. 44-2) ("I am not and never have been a member of the Appeals Committee.").

specific about the source of this implied promise, the exact promises the university made to the student, and the promises the student made in return.'" *Doe v. Purdue Univ.*, 929 F.3d 652, 660 (7th Cir. 2019) (quoting *Charleston v. Bd. of Trs. of Univ. of Ill. at Chi.*, 741 F.3d 769, 772 (7th Cir. 2013)).

Jois does not point to an identifiable contractual promise, but makes general, unsupported statements regarding an alleged entitlement to various things. Jois claims that he relied on the "Student Handbook and academic policies guaranteeing nondiscrimination and fair, deliberative proceedings" and "IUSM's stated promises of individualized consideration and due process," but fails to identify the specific promises he claims IUSM breached and fails to provide the Handbook and policies to the Court. (Pl.'s Br. 11, ECF No. 51.) Jois cites—without specifying page numbers or paragraphs—to his responses to interrogatories, which contain no evidence of a concrete contractual promise between Jois and IUSM. (*Id.*) Because he fails to "be specific about the source of the implied promise, the exact promises [IUSM] made . . . and the promises [he] made in return," *Doe*, 929 F.3d at 660, Jois has failed to present evidence of an entitlement to which he was deprived. *See Johnson v. Cambridge Indus., Inc.*, 325 F.3d 892, 901 (7th Cir. 2003) (explaining that summary judgment "is the 'put up or shut up' moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of events" (quoting *Schacht v. Wis. Dep't of Corr.*, 175 F.3d 497, 504 (7th Cir. 1999))). Therefore, Jois's procedural due process claim fails as a matter of law.

**B. Title II[3] of the ADA and Section 504 of the Rehabilitation Act**

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. Section 504 of the Rehabilitation Act states that "[n]o otherwise qualified individual with a disability . . . shall, solely by reason of his or her disability, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794. As relevant here, "the statutes are coextensive." *CTL ex rel. Trebatoski v. Ashland Sch. Dist.*, 743 F.3d 524, 528 (7th Cir. 2014).

After the plaintiff shows he is a qualified individual, he can prove disability discrimination under the Rehabilitation Act and ADA in three ways: "(1) the defendant intentionally acted on the basis of the disability, (2) the defendant refused to provide a reasonable modification, or (3) the defendant's rule disproportionately impacts disabled people." *A.H. by Holzmueller v. Ill. High Sch. Ass'n*, 881 F.3d 587, 593 (7th Cir. 2018) (quoting *Washington v. Ind. High Sch. Athletic Ass'n*, 181 F.3d 840, 847 (7th Cir. 1999)). Jois proceeded under the theory that IUSM denied him

---

[3] The Court notes that Jois alleged in his complaint that Defendants violated Title III of the ADA, which applies to private entities and nonprofits that serve the public, not public universities. 42 U.S.C. § 12313; *see also Porch v. Univ. of Ill.,* 2022 WL 3082352, at *4-5 (N.D. Ill. Aug. 3, 2022) ("Title III of the ADA only applies to prohibit discrimination by private entities, not public entities"). Jois should have invoked Title II of the ADA. However, Defendants do not address this discrepancy in their briefing and Jois corrects this by referring to Title II in his reply brief. (*See* Pl.'s Br. 13, ECF No. 51.) Therefore, the Court will analyze as if Jois correctly pled under Title II.

reasonable accommodation. To establish a violation under that theory, Jois must show that (1) he is a qualified individual with a disability; (2) IUSM was aware of the disability; and (3) IUSM failed to reasonably accommodate the disability. *E.E.O.C. v. AutoZone, Inc.*, 809 F.3d 916, 919 (7th Cir. 2016). "Where the [student] does not provide sufficient information to the [university] to determine the necessary accommodations, the employer cannot be held liable for failing to accommodate the disabled [student]." *Reeves ex rel. Reeves v. Jewel Food Stores, Inc.*, 759 F.3d 698, 702 (7th Cir. 2014).

First, Defendants argue that Jois has not come forward with evidence that he is a qualified individual with a disability. A "disability" under the ADA and Rehabilitation Act is "a physical or mental impairment that substantially limits on or more major life activities of such individual." 42 U.S.C. § 12102(1); *see also* 29 U.S.C. § 705(9). Jois has been diagnosed with several mental health issues by his psychiatrist, Dr. Michael Frampton: anxiety, ADHD, and depression. (*See* Pl.'s Interrog. Resp. No. 6, ECF No. 44-5 at 23-25.) Jois summarily argues that these conditions "substantially limited his ability to concentrate, manage time, and cope with exam-related stress." (Pl.'s Br. 14, ECF No. 51.) These mental health conditions *can* give rise to a substantial limitation on a major life activity for purposes of the ADA and Rehabilitation Act. *See Cassimy v. Bd. of Educ. of Rockford Pub. Sch., Dist. No. 205*, 461 F.3d 932, 936 (7th Cir. 2006) ("[M]ajor depression may or may not give rise to a substantial limitation on a major life activity"); *Carothers v. Cnty. of Cook*, 808 F.3d 1140, 1147 (7th Cir. 2015) (noting that plaintiff "has to show that her anxiety

disorder significantly restricted [her] ability to perform either a class of jobs or a broad range of jobs") (citation modified); *Healy v. Nat'l Bd. of Osteopathic Med. Exam'rs, Inc.*, 870 F. Supp. 2d 607, 620-21 (S.D. Ind. 2012) (considering whether plaintiff's ADHD substantially limited a major life activity). However, Jois points to nothing in the record that shows that his conditions substantially limit a major life activity. Jois cites his answers to interrogatories, without referencing a particular response or page. (Pl.'s Br. 14, ECF No. 51.) While it is not the Court's role to comb through all thirty-seven pages of the document looking for support for Jois's contention that his conditions substantially limit a major life activity, *Grant*, 870 F.3d at 572–73, after doing so, the Court found no such support.

The Court also agrees with Defendants' argument, which Jois did not address, that the undisputed evidence demonstrates that Jois was not "otherwise qualified." (Def.'s Br. 24, ECF No. 45.) "In the context of a university, a person is 'otherwise qualified' if [he] is able to meet all of the program's requirements in spite of [his] disability with or without reasonable accommodation." *Khan v. Midwestern Univ.*, 879 F.3d 838, 844 (7th Cir. 2018). The undisputed evidence demonstrates that Jois was unable to meet all of the medical program's requirements: he did not pass STEP 1 after two attempts, which is required to move on to the next phase of medical school, and he had prior academic difficulties that already required him to repeat Phase 1, Year 1. (Reeser Aff. Ex. 4L, ECF No. 44-4 at 57-58); *see also Khan*, 879 F.3d at 846 (medical student was not otherwise qualified when she failed more classes than the university's policies permit).

Even if there was a genuine dispute as to whether Jois is a qualified individual with a disability, Defendants would still be entitled to summary judgment because it is undisputed that IUSM was not aware of the disability and that the negative academic determination was not made because of Jois's disability.

Defendants point out that Jois did not provide IUSM with the requisite notice of his disability and need for specific accommodations. The defendant's "knowledge of the disability is a prerequisite to finding liability." *Beck v. Univ. of Wis. Bd. of Regents*, 75 F.3d 1130, 1134 (7th Cir. 1996). Here, it is undisputed that Dr. Walvoord did not have knowledge of Jois's disability beyond his oral description of "exam anxiety," which is somewhat undermined by his statement that he failed the STEP 1 exam because he was "overconfident" about it, (Jois Dep. at 167:16-18, ECF No. 44-1), due to the firewall between Mental Health Services and IUSM faculty. (Walvoord Aff. ¶ 5, ECF No. 44-2.) In any event, he did not say that he failed STEP 1 due to any disability or lack of accommodation, but rather that he just did not do a good job in his exam preparation. (Reeser Aff. Ex. 4J, ECF No. 44-4; Jois Dep. 181:8-181:12, ECF No. 44-1.) It is also undisputed that Jois never submitted any documentation or information to Dr. Klemsz or the Disability Accommodation Committee. (Klemsz Aff. ¶ 18-19, ECF No. 44-3.) Jois's "failure . . . to make reasonable efforts to help [IUSM] determine what specific accommodations [were] necessary" defeats his reasonable accommodations claim. *Beck*, 75 F.3d at 1135 (affirming summary judgment for university on ADA claim where employee did not inform university of what accommodations it needed and failed to sign a release of doctor's information).

Without knowledge of Jois's disability, IUSM cannot be held liable for failing to accommodate that disability.

Further, Jois was not dismissed because of his disability. Liability under the ADA and Rehabilitation Act requires that the negative academic determination was made *because of* the student's disability. *Hillman v. City of Chi.*, 834 F.3d 787, 795 (7th. Cir. 2016). The record shows that Jois was dismissed from IUSM after he failed a required foundational examination twice, not because of his disability. (Reeser Aff. 58, ECF No. 44-4.) Jois argues that a reasonable jury could infer that IUSM dismissed him for reasons "inextricably linked to his disabilities" because IUSM refused to offer him the same retake preparation time as other students, refused to engage in the accommodation process, and terminated his health insurance. (Pl.'s Br. 17, ECF No. 51.) However, Jois has offered no admissible evidence to show that he was not afforded the same retake time as other students, that he requested accommodation, or that IUSM decided to terminate his insurance because of his disability. Accordingly, there is no genuine dispute of material fact on causation.

**C. Title VI of the Civil Rights Act**

Under Title VI, "[n]o person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 42 U.S.C. § 2000d. IUSM is entitled to summary judgment on the Title VI claim because no reasonable jury could conclude that IUSM discriminated against Jois based on his race.

Defendants rely on the indirect method of proving intentional discrimination of *McDonnel Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973) to argue that Jois cannot establish a prima facie case of racial discrimination. Under the *McDonnell Douglas* framework, Jois bears the burden of proving a prima facie case of racial discrimination by demonstrating that (1) he is a member of a protected class; (2) his performance met IUSM's legitimate expectations; (3) he suffered an adverse action; and (4) IUSM treated similarly situated persons outside his class more favorably. *See Brewer v. Bd. of Trs. of Univ. of Ill.*, 479 F.3d 908, 921 (7th Cir. 2007); *see also McDonnell Douglas Corp.*, 411 U.S. at 802. If Jois makes this showing, the burden shifts to Defendants "to articulate some legitimate, nondiscriminatory reason for the" challenged conduct. *McDonnell*, 411 U.S. at 802. If Defendants articulate that legitimate reason, the burden of production shifts back to Jois to prove by a preponderance of the evidence that the reasons offered by Defendants are pretextual. *Id.* at 804. In *Ortiz v. Werner Enters., Inc.*, the Seventh Circuit encouraged district courts to dispense with the direct and indirect proof dichotomy and instead focus on "the sole question that matters": here, whether a reasonable juror could conclude that Jois would not have been subject to adverse action "if he had a different ethnicity, and everything else had remained the same." 834 F.3d 760, 764 (7th Cir. 2016). *Ortiz* was clear, however, that its holding is "consistent with *McDonnel Douglas* and its successors." *Id.* at 766. Thus, "as long as the [C]ourt considers the evidence as a whole, it may use the *McDonnell Douglas* framework as a supplemental tool." *Tyburski v. City of Chi.*, 964 F.3d 590, 599 (7th Cir. 2020). The Court finds that no

reasonable jury could conclude that Jois has satisfied the elements of a discrimination claim under either method.

*a. McDonnell Douglas*

Jois has not established a prima facie case of racial discrimination under *McDonnell Douglas*. There is no dispute that Jois is a member of a protected class. However, IUSM contends that Jois fails on the second and fourth prongs of *McDonnell Douglas*. The Court agrees.

The record, viewed in the light most favorable to Jois and drawing reasonable inferences in his favor, demonstrates that Jois failed to meet the legitimate expectations of IUSM. IUSM requires all medical students to pass STEP 1 before they are permitted to move on to Phase 2 of the medical curriculum. (Walvoord Aff. ¶ 14, ECF No. 44-20; Jois Dep. 158:15-17, ECF No. 44-1.) Jois failed STEP 1 twice. (Reeser Aff. Ex. 4L, ECF No. 44-4 at 57.) After his first failure, he was told that he had one more opportunity to take STEP 1. (*Id.*) Jois admitted that he failed the first time because he did not study enough. (Reeser Aff. Ex. 4J, ECF No. 44-4; Jois Dep. 181:8-181:12, ECF No. 44-1.) Jois also failed two other courses in his first year, requiring him to repeat Phase 1, Year 1. (Reeser Aff. Ex. 4L, ECF No. 44-4 at 57.) IUSM encouraged Jois to work with Dr. Bauer to prepare for his STEP 1 retake, which Jois did not do, and offered him additional resources to assist in his second try at Phase 1, Year 1. (Reeser Aff. Ex. 4K, ECF No. 44-4; Jois Dep. 199:23-200:3, 207:14-207:18, ECF No. 44-1.) The evidence, then, shows that IUSM tried to help him succeed rather than succumb to some racial animus of which there is no evidence.

The undisputed evidence shows that Jois failed to meet the legitimate expectations of IUSM and Jois fails to point to any evidence showing otherwise. *See Martin v. S. Ill. Univ. Sch. of Med.*, No. 16-CV-3294, 2017 WL 4780613, at *10 (C.D. Ill. Oct. 23, 2017) (medical student who was on academic probation, repeated the first-year curriculum, and failed to receive satisfactory grades in numerous classes failed to meet university's legitimate expectations).

The record also does not demonstrate that similarly situated individuals outside of his protected class were treated more favorably than Jois. Jois cites Exhibit 8 to demonstrate that non-Indian students were afforded six weeks to study for a STEP 1 retake, while he was only afforded twenty-three days and compelled to attend daily review sessions. Exhibit 8 contains no such evidence. (*See* Ex. 8, ECF No. 51-2 at 51-103.) Construing in the light most favorable to Jois, Exhibit 8, Marti's Reeser's affidavit, shows that Jois had from April 25, 2022, to June 1, 2022, to study for STEP 1, approximately five and a half weeks. (*See id.* at 100.) It says nothing about the time that non-Indian students retaking STEP 1 were afforded to study and whether they were required to attend daily in-person review sessions. Jois has presented no evidence to create a genuine dispute as to whether similarly situated individuals outside of his protected class were treated more favorably than him.

The Court also notes that, even if Jois made the prima facie showing of discrimination, IUSM put forth a non-discriminatory reason for Jois's dismissal: his inadequate academic performance. (Reeser Aff. ¶ 18, ECF No. 44-4.) Jois responds that departures from ordinary procedures and conflicts of interest "permit a

reasonable jury to find that [his] dismissal was not the result of neutral academic judgment but of discriminatory animus." (Pl.'s Br. 22, ECF No. 51.) While, in some factual circumstances, departure from standard procedure supports an inference of discrimination, *Ratliff v. City of Milwaukee*, 795 F.2d 612, 627 (7th Cir. 1986), Jois has not presented evidence to create a genuine dispute that such procedural departures existed in this case.

*b. Ortiz*

Even if Jois made out a prima facie case of race discrimination, IUSM is entitled to summary judgment under *Ortiz*. Viewing the evidence as a whole, no reasonable factfinder could find that Jois would not have been subject to adverse action if he had a different ethnicity, and everything else had remained the same." *Ortiz*, 834 F.3d at 764.

For one, Jois admits that he has no evidence that any adverse action resulted from his membership in a protected class. (Jois. Dep., 55:18-56:1; 70:23-71:2; 71:7-71:17; 101:15 - 101:18, ECF No. 44-1.) Jois argues, with a blanket citation to Exhibit 9, that the record includes his "account of racially and culturally insensitive comments made by [Dr. Okoro], referencing Plaintiff's Indian background and implying that he was distinguishable from others of his ethnicity." (Pl.'s Br. 21, ECF No. 51.) However, Exhibit 9 contains no such account, and the Court will not further scour the record for such evidence. Even so, such offensive remarks by a faculty member are insufficient to make an inference of discrimination by the university, particularly

absent evidence that Okoro influenced the dismissal decision. *See Sun v. Bd. of Trs. of Univ. of Ill.*, 473 F.3d 799, 813 (7th Cir. 2007).

Jois also relies on the fact that he was one of the few Indian students in his cohort as circumstantial evidence of discrimination. (Pl. Br. 22-23, ECF No. 51 (citing Ex. 12).) First, the Court notes that Exhibit 12 contains nothing to support the contention that he is one of a few Indian students. And even if his cohort did contain only a few Indian students, that would not show that IUSM discriminated against *him*. Jois has provided no evidence that he was treated differently from other non-minority students.

While Jois contends that he was subjected to "departures from standard procedure" that was "not directed toward any other students," (Pl.'s Br. 22, ECF No. 51), he presents no evidence to support that contention. For example, he presents no evidence that the Appeals Committee's meetings are generally longer than twenty minutes, nor that non-minority students receive longer meetings. (*Id.*) He also presents no evidence that it is not standard procedure for the Appeals Committee to include a professor with whom the student subject to the meeting had a previous, unrelated negative experience.[4] (*Id.*) Because Jois has not presented evidence from which a reasonable factfinder could find that he would not have been dismissed from IUSM if he had a different ethnicity, Defendants are entitled to summary judgment.

**D. Breach of Contract**

---

[4] The Court does not consider Jois's contention that Dr. Deane "publicly berated him" in front of classmates after Dr. Okoro forwarded a confidential email from Jois to Dr. Deane. (Pl.'s Br. 22, ECF No. 51.) Jois cites to Exhibit 13 and 14 to contend that such events occurred, but neither exhibit supports that contention.

IUSM is entitled to summary judgment on the breach of contract claim. Indiana law characterizes the legal relationship between a student and university as one of implied contract. *See Amaya v. Brater*, 981 N.E.2d 1235, 1240 (Ind. Ct. App. 2013); *Neel v. Ind. Univ. Bd. of Trs.*, 435 N.E.2d 607, 610-11 (Ind. Ct. App. 1982); *Castelino v. Rose-Hulman Inst. of Tech.*, No. 2:17-cv-139-WTL-MJD, 2019 WL 367623, at *13 (S.D. Ind. Jan. 30, 2019), *aff'd* 999 F.3d 1031 (7th Cir. 2021); *accord Ross v. Creighton Univ.*, 957 F.2d 410, 416 (7th Cir. 1992)) (noting that, under Illinois law, express contracts between students and universities are 'rarely employed').

The "catalogues, bulletins, circulars, and regulations of a university made available to the matriculant become a part of the contract." *Amaya*, 981 N.E.2d at 1240 (citing *Ross*, 957 F.2d at 416). A "student must point to an identifiable contractual promise that the [university] failed to honor" to establish an implied contract that entitled them to a specific right. *Bissessur*, 581 F.3d at 602 (internal quotation marks omitted). However, Indiana courts "exercise[] the utmost restraint in applying traditional legal rules to disputes within the academic community" when the result would be to override an academic determination "[b]ecause such determinations rest in most cases upon the subjective professional judgment of trained educators." *Neel*, 435 N.E.2d at 610-11. Accordingly, "[a]bsent a showing of bad faith on the part of the university or a professor, the court will not interfere." *Id.* "Bad faith" requires a showing of conscious wrongdoing. *Gordon v. Purdue Univ.*, 862 N.E.2d 1244, 1251 (Ind. Ct. App. 2007). So "the sole function of courts is to determine whether the educational institution acted illegally, arbitrarily, capriciously, or in bad

faith." *Amaya*, 981 N.E.2d at 1240. Accordingly, to survive summary judgment, Jois must present evidence from which a reasonable jury could conclude that IUSM acted illegally, arbitrarily, capriciously, or in bad faith.

Jois contends that the Defendants breached their contractual duties when (1) IUSM failed to follow its Disability Accommodation Policy; (2) the SPC treated Jois inconsistently with its own standards; (3) the Appeals Committee failed to meet IUSM's own standards of impartiality and fairness; and (4) IUSM terminated Jois's health insurance while his appeal was pending.

First, Jois has not shown that there is a binding contract between himself and IUSM. Jois points to Exhibit 9 to support his contention that IUSM's published policies create a binding contract "which guaranteed nondiscrimination, fair and deliberative decision-making, and reasonable accommodations for disabilities." (Pl.'s Br. 18, ECF No. 51.) Notwithstanding the fact that the Court's preceding analysis has found no evidence of transgressions by IUSM in these very areas capable of supporting a claim of breach, Exhibit 9 does not contain any published policies, and thus Jois does not adequately detail for the Court the nature of the alleged contract between Jois and IUSM. So Jois cannot "point to an identifiable contractual promise that the [university] failed to honor." *Bissessur*, 581 F.3d at 602. Thus, a reasonable jury could not find that a binding contract existed between Jois and IUSM as to alleged breaches (2)-(4). However, Jois later cites Exhibit 7, Dr. Klemsz's affidavit, which contains the Disability Accommodation Policy, as creating a genuine dispute for the first alleged breach—whether a contract existed guaranteeing reasonable

accommodation for disabilities. (Ex. 7 at 3, ECF No. 51-2 at 26; Klemsz Aff. ¶ 20, ECF No. 44-3.)

Regardless of the existence of any binding contracts between Jois and IUSM, no reasonable factfinder could find that IUSM breached any of the contracts that Jois claims existed.

First, no reasonable factfinder could find that IUSM breached a contract to provide disability accommodation or that IUSM acted in bad faith. The Disability Accommodation Policy states that "[t]o be considered for accommodation, students must: identify their self to the Assistant Dean for Academic Advising; declare the disability, or suspected disability, *in writing*; [and] submit a request for accommodation." (Klemsz Aff. ¶ 20, ECF No. 44-3 (emphasis added).) Jois never communicated his disability to Dr. Klemsz, the Assistant Dean for Academic Advising at IUSM, in writing or orally. (Jois Dep. 56:12-56:13, ECF No. 44-1.) While he *orally* gave Dr. Walvoord permission to look at his mental health records, but he does not know if she ever looked at those records. (Jois Dep. 56:2-56:9, ECF No. 44-1), Dr. Walvoord is not the Assistant Dean for Academic Advising and there is no evidence that she or Dr. Klemsz had knowledge of Jois's disability because of the firewall between IUSM faculty and the Mental Health Services. (Walvoord Aff. ¶ 5, ECF No. 44-2.) In any event, Jois neither complied with the disclosure requirements of the Disability Accommodation Policy, nor submit any documentation requesting accommodation. (Klemsz Aff. ¶ 18-19, ECF No. 44-3.) Given that Jois did not properly identify himself to the Assistant Dean in writing nor submit a request for

accommodation, IUSM was under no obligation to begin providing Jois with any accommodation pursuant to the Disability Accommodation Policy. Moreover, Jois acknowledges that he has no evidence that any failure to provide resources for his disability was done purposefully. (Jois Dep. 59:6-59:9, ECF No. 44-1.)

Neither could any reasonable factfinder find that the SPC "treated [Jois] arbitrarily and inconsistently with its own standards" by "shorten[ing] [his] STEP 1 retake preparation period to only twenty-three days" and "requir[ing] [him] to attend daily in-person review sessions." (Pl.'s Br. 18, ECF No. 51.) Jois has presented no admissible evidence establishing a policy to provide students with six weeks' study time to prepare for STEP 1 and not require them to attend in-person review sessions, or even that *any* other student was provided with those conditions. Moreover, Jois's statement that he was only afforded twenty-three days to study is inconsistent with the record, which indicates that he had, at worst,[5] from April 25, 2022, to June 1, 2022, to study for STEP 1—a total of five and a half weeks. (*See* Klemsz Aff. ¶ 32 (stating that Jois met with the SPC on April 25 after his first STEP 1 failure); Reeser Aff. Ex. 4L, ECF No. 44-4 (stating that Jois took STEP 1 again on June 1.)) Even assuming the existence of an implied contract to provide those conditions, no reasonable jury could find that IUSM acted in bad faith in not providing Jois with six weeks to study and requiring him to attend in-person review sessions, as Jois

[5] Jois could have had over seven weeks to study for his second STEP 1 exam, as he found out about his first failure in early April 2022, (Klemsz Aff. ¶¶ 26, 31), and he could have immediately began studying. Just as with his admitted choice to underprepare for the first test, (Jois Dep. at 167:16-18, ECF No. 44-1), he is the one who chose to truncate his retake preparation.

admitted that he has no evidence that anyone was purposefully trying to hurt him through the STEP 1 retake scheduling process. (Jois Dep. 60:14-17, ECF No. 44-1.)

Third, no reasonable factfinder could find that IUSM breached an implied contract to meet their own standards of impartiality and fairness in the appeals process. Jois failed to show that the alleged conflict of interest with Dr. Deane would preclude him from sitting in the Appeals Committee unrelated to the alleged cheating allegation under the university's own standards. Jois cites Exhibits 4 and 5, neither of which support the contention that IUSM violated their own standards of impartiality and fairness in allowing Dr. Deane to sit on the Appeals Committee. And even so, Jois presents no evidence to create a genuine dispute of fact as to IUSM's bad faith in allowing Dr. Deane to sit on the Appeals Committee.

Finally, no reasonable factfinder could find that the termination of Jois' health insurance policy while his appeal was pending violated the "covenant of fair dealing implicit in every contract." (Pl.'s Br. 19, ECF No. 51.) "Indiana does not imply [] a covenant [of good faith and fair dealing] in every contract." *Allen v. Great Am. Rsrv. Ins. Co.*, 766 N.E.2d 1157, 1162 (Ind. 2002). Such a duty is "generally only in limited circumstances involving employment contracts and insurance contracts." *Allison v. Union Hosp., Inc.*, 883 N.E.2d 113, 123 (Ind. 2008). "If the contract is ambiguous or expressly imposes such a duty on the parties, then the courts will impose such a duty." *Id.* Jois has not presented any argument as to why the duty of good faith and fair dealing should apply here. And if the duty applied, no reasonable juror could find IUSM had bad faith when it terminated Jois's health insurance. Rather, the director

of Student Financial Services at IUSM informed Jois of the non-nefarious reason for the termination of his health insurance for the 2022-2023 academic year: he was not enrolled for the fall semester, as he had been dismissed from IUSM. (Ex. 10, ECF No. 51-2 at 144.)

### E. Promissory Estoppel

Defendants argue that they are entitled to summary judgment on Jois's promissory estoppel claim because Indiana law doesn't recognize school policies as the kind of unambiguous promise required for an estoppel claim. (Def.'s Br. 30, ECF No. 45.) Jois argues that he relied on promises in IUSM's handbook and policies expressly promising students fair procedures, equal treatment, and individualized consideration of disability disclosures by paying tuition, disclosing his conditions, and participating in the SPC and appeal process. (Pl.'s Br. 19, ECF 51.). Again, the Court has found that Jois has failed to prove that IUSM denied Jois fair procedures, that IUSM treated him unequally, or that he properly disclosed disabilities and requested accommodations. Still, the Court will now proceed to address this claim.

Under Indiana law, to succeed on his promissory estoppel claim, Jois must establish: "(1) a promise by the promisor; (2) made with the expectation that the promisee will rely thereon; (3) which induces reasonable reliance by the promisee; (4) of a definite and substantial nature; and (5) injustice can be avoided only by enforcement of the promise." *Peters v. Gilead Sciences, Inc.*, 533 F.3d 594, 600 (7th Cir. 2008) (quoting *Brown v. Branch*, 758 N.E.2d 48, 52 (Ind. 2001). The party who relies upon the doctrine of promissory estoppel has the burden to establish all the

facts necessary to support its application. *First Nat'l Bank of Logansport v. Logan Mfg. Co.*, 577 N.E.2d 949, 955 (Ind. 1991). Jois has failed to establish the facts necessary to support the application of promissory estoppel, so Defendants are entitled to summary judgment.

First, the Court agrees with Defendants that there is no evidence on the record to establish the first and fourth elements—a promise by the promisor that is definite and substantial. Jois vaguely refers to IUSM's handbooks and policies, but neither does he provide those policies for the Court nor identify any definite promises of fair procedure, equal treatment, and individualized consideration of disability disclosures within those handbooks and policies. Without knowledge of the policies allegedly creating a promise, a reasonable factfinder could not find a definite and substantial promise made by IUSM.

Second, the Court has not found, nor has Jois provided, any Indiana case law recognizing a promissory estoppel claim against a public school based on a handbook or policy. The Court will not endorse this theory because Indiana courts have not done so. *See also Higginbottom ex rel. Davis v. Keithley*, 103 F. Supp. 2d. 1075, 1083 (S.D. Ind. 1999) (granting public school defendant summary judgment on Indiana promissory estoppel claim because Indiana courts have not recognized such claims). This is in keeping with the tradition of affording a university's academic decisions a degree of deference. *See Neel*, 435 N.E.2d at 610-11.

## V. Conclusion

For the foregoing reasons, Defendant's Motion for Summary Judgment, (ECF No. 43), is **granted**. The Court will issue final judgment under Federal Rule of Civil Procedure 58 in a separate order. The Clerk **shall close this case**.

**SO ORDERED.**

IT IS SO ORDERED.

Date: 09/30/2026

JAMES R. SWEENEY II, CHIEF JUDGE
United States District Court
Southern District of Indiana

Distribution:

Jennifer Westerhaus Adams
Mattingly Burke Cohen & Biederman LLP
jennifer.adams@mbcblaw.com

Hamish S. Cohen
Mattingly Burke Cohen & Biederman LLP
hamish.cohen@mbcblaw.com

Lawrence A Katz
LLG National NJ PC
lawrence.katz@llgnational.com

Brian Robison Weir-Harden
Mattingly Burke Cohen & Biederman LLP
brian.weir-harden@mbcblaw.com